**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEPHANIE VINCENT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2302 |
| | § | |
| COMERICA BANK, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a defamation suit brought by Plaintiff Stephanie Vincent ("Vincent") against her former employer, Defendant Comerica Bank ("Comerica" or the "bank"). Pending before the Court are Comerica's Motion for Summary Judgment [Doc. # 21] ("Comerica's Motion") and Vincent's Cross-Motion for Partial Summary Judgment [Doc. # 23] ("Vincent's Motion").[1] Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that Comerica's Motion should be granted and Vincent's Motion should be denied.

**I.    FACTUAL BACKGROUND**

The undisputed evidence in the summary judgment record reflect the following facts. In January 1998, Comerica hired Vincent as a part-time bank teller at its branch in Pasadena,

---

[1]    The parties have also submitted the following: Vincent's Response to Comerica's Motion [Doc. # 22]; Comerica's Reply to Vincent's Response [Doc. # 24]; Comerica's Response to Vincent's Motion [Doc. # 25]; Vincent's Surresponse to Comerica's Motion [Doc. # 26]; and Vincent's Reply to Comerica's Response [Doc. # 27].

Texas ("Pasadena Branch").  Vincent was promoted to a full-time teller position in March 2004.  She held that position until she was discharged on October 5, 2004.

On or about September 30, 2004, Vincent accepted several deposits from a customer.  Vincent did not put a hold on the deposits.  Thus, the customer was given immediate access to the deposits.  The customer spent the full amount purportedly deposited.  The checks subsequently were returned to the bank unpaid.  The customer did not reimburse the deficiency and Comerica lost $3,449.65.

Vincent previously had been orally and verbally counseled for multiple incidents involving monetary or potential monetary losses.  On October 5, 2004, Comerica therefore discharged her from employment.  Comerica claims Vincent violated Comerica's policies and procedures by not placing a "hold" on the deposits in issue.  Steven Stiles, a manager at the Pasadena Branch, informed Vincent that her employment was terminated for causing Comerica to incur "a monetary loss."[2]

Comerica utilizes an internal "separation form" to report for personnel purposes the rationale for decisions to discharge employees.  The bank uses termination codes to explain the reasons for each employee's separation.  Javier De La Vega ("De La Vega"), manager of the Pasadena Branch, submitted Vincent's separation form.  De La Vega selected "differences/balancing problems" as the termination code on Vincent's separation form.[3]

---

[2]     Stephanie Vincent Deposition ("Vincent Deposition"), Exhibit 3 to Comerica's Motion, at 48–49.

[3]     Vincent Separation Form, Exhibit 4 to Comerica's Motion, at Comerica 0001.

Comerica routinely uses this code for employment separations involving monetary losses. The separation form states "losses" as the explanation for Comerica's unwillingness to re-hire Vincent as a teller.

Vincent applied for a position with Edward Jones, an investment firm.  In her written application for the position, Vincent disclosed that Comerica terminated her employment. She later explained the circumstances of her discharge to Leiah Douglas ("Douglas"), the Edward Jones employee who conducted her telephone interview.  Vincent informed Douglas that she was discharged for causing a loss by failing to place a hold on a customer's deposits.[4]  Edward Jones offered Vincent a position as a Branch Office Administrator, contingent upon a background check.  As part of the background check, Vincent authorized Edward Jones to contact her former employers and obtain a consumer report.

On October 27, 2004, Douglas phoned Comerica to inquire of the circumstances of Vincent's discharge.  Kay Ruiz ("Ruiz"), a Comerica employee in the Human Resources department, received the call.  Douglas stated that she was with the "corporate office" but did not identify her employer.  Comerica has a policy of providing a former employee's prospective employer with neutral employment references which included merely the position held and dates of employment.  Ruiz, mistakenly believing that Douglas was with Comerica's corporate office, consulted Vincent's separation form.  Ruiz then recited the

---

[4]     Although Vincent disputes violating Comerica's policy on customer deposit holds, her explanation to Douglas of the circumstances surrounding her termination is materially identical to the facts recited above.  *See* Vincent Deposition, at 78–79.  Whether Vincent violated Comerica's policy is immaterial to the analysis in this Memorandum and Order.

reason for termination as the wording from the termination code entry on the separation form. She therefore informed Douglas that Vincent was involuntarily discharged for "differences/balancing problems."  Ruiz was not aware of the facts surrounding Vincent's termination.  Ruiz did not tell Douglas that Vincent caused a monetary loss or failed to place a hold on customer deposits.

Later that same day, after Douglas informed Vincent of her conversation with Ruiz, Vincent phoned Ruiz and questioned the disclosure of "differences/balancing problems" as the reason for her discharge.  Vincent disagreed that she had been discharged for "differences/balancing problems" and told Ruiz that she might not get the job with Edward Jones because of the disclosed termination code.  Vincent did not request any change in her separation form.  Nor did she ask Ruiz to clarify anything with Edward Jones.  Ruiz gave Vincent the telephone number for Lynelle Long ("Long"), a manager in Comerica's Human Resources department.  Shortly thereafter, Ruiz called Douglas and told her the information regarding Vincent's termination was confidential and should not have been divulged.  Ruiz also phoned Long and informed her that she mistakenly disclosed Vincent's termination code to Edward Jones.

Vincent, sometime on or around October 27, 2004, called Long and requested that Comerica change the termination code, arguing that the termination code was wrong.  Long responded that she could not change the form, explaining that Comerica uses "differences/balancing problems" as a matter of practice to record terminations for causing monetary losses.  Long referred Vincent to a toll-free telephone number to use for

4

employment verifications.  Vincent did not request that Long contact Edward Jones to clarify the circumstances of her discharge.

By letter dated November 17, 2004, Edward Jones withdrew Vincent's job offer "based, either in whole or in part, on information provided to [Edward Jones] in a Consumer Report or Investigative Consumer Report."[5]  Edward Jones did not divulge the specific information in the "consumer report" that triggered the decision.  Nor did Edward Jones reference in this letter anything about Comerica, the fact that Vincent was terminated from a prior job, or anything about the information from Ruiz.

On May 31, 2005, Vincent filed this lawsuit in Texas state court against Comerica claiming libel and slander.[6]  Vincent alleges Comerica defamed her by informing Edward Jones that Comerica terminated her for "differences/balancing problems."  Vincent further contends that she lost her job offer from Edward Jones because of this alleged defamatory statement.  Comerica subsequently removed the case to this Court based on federal diversity jurisdiction.  The parties have completed discovery and the Motions are ripe for decision.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

---

[5]     Letter from Edward Jones to Vincent, Exhibit 6 to Comerica's Motion, at Comerica 0006.

[6]     In her Amended Complaint, Vincent also pleads a negligence and gross negligence cause of action against Comerica.  *See* Amended Complaint [Doc. # 19], ¶¶ 18-20.  However, by letter dated March 16, 2006, Vincent informed Comerica that she was abandoning these theories. *See* Exhibit 1 to Comerica's Motion.  The Court therefore will dismiss Vincent's negligence and gross negligence claims.

make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Freeman v. Tex. Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The moving party may meet this burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). The movant meets this

initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith*, 158 F.3d at 911.

If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Smith*, 158 F.3d at 911); *see also Quorum Health Res., LLC v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994))). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th

Cir. 1998).   Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.*  In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).   "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted).

## III.   ANALYSIS

### A.   Limitations in Vincent's Employment Application

Comerica contends Vincent's suit is untimely.   Comerica relies on the limitations period to which Vincent agreed in her employment application.   When Vincent applied for her position with Comerica, she signed an application containing the following provision (the "Limitations Provision"):

> I agree that this application is not an offer of employment.  I agree that if I am employed by Comerica . . . that in partial consideration for my employment, I shall not commence any action or other legal proceeding relating to my

employment or the termination thereof more than six months after the event complained of and agree to waive any statute of limitations to the contrary.[7]

Comerica allegedly defamed Vincent on October 27, 2004.[8]  Vincent did not file this lawsuit until May 31, 2005—more than six months from the date of the alleged defamation.  Thus, if the Limitations Provision is valid and applicable, Vincent's defamation claims are time barred.

Vincent first argues that the Limitations Provision is inapplicable because the lawsuit does not arise out of her employment and she is not challenging her discharge.  This argument is rejected.  The Limitations Provision is unambiguous.  It includes lawsuits "relating to [Vincent's] employment or termination thereof."[9]  Vincent sued Comerica for reporting to Edward Jones its reason for terminating her employment at Comerica.  Vincent's defamation claim therefore clearly relates to Vincent's employment.  Further, even more specific to the language in the Limitations Provision, the claim relates to Comerica's termination of her employment.

Second, Vincent contends the Limitations Provision is void based on a Texas statute which prohibits "a stipulation, contract, or agreement that purports to limit the time in which

---

[7]      Exhibit 4 to Comerica's Motion, at Comerica 0013.

[8]      The discovery rule applies to defamation claims.  *See Walker v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 285 (Tex. App.—Dallas 2003, no pet.) (citing *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976)).  The discovery rule is not at issue here because Vincent became aware of the alleged defamatory statement the same day Comerica made the statement.

[9]      *See* Limitations Provision.

to bring suit on the stipulation, contract, or agreement to a period shorter than two years." *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 16.070(a) (Vernon 1997) (emphasis added). Vincent's reliance on this statute is misplaced. Vincent is not suing on a "stipulation, contract, or agreement." Rather, she asserts a defamation claim under Texas state law. Vincent has not cited, and the Court has not located, any legal authority applying § 16.070(a) to a defamation claim or any other claim not based on the contract containing the abbreviated limitations period. Indeed, the Court's research reveals that Texas law contemplates shortened limitations in other contexts. *See Basse Truck Line, Inc. v. First State Bank*, 949 S.W.2d 17, 21–22 (Tex. App.—San Antonio 1997, writ denied) (affirming summary judgment for defendants on plaintiff's DTPA claims; plaintiff's claims were untimely based on provision in depository agreements shortening limitations period from one year to ninety days); *Canfield v. Bank One, Texas, N.A.*, 51 S.W.3d 828, 836 (Tex. App.—Texarkana 2001, pet. denied) (noting that a shortened period of limitations in a depository agreement regarding unauthorized signature claims is legally valid if "it is reasonable and in conformance with the requisites of contract law"); *see also Adevereaux v. Sports & Fitness Clubs of Am., Inc.*, 2004 WL 414896, at *2 (N.D. Tex. Feb. 17, 2004) (enforcing provision in employee handbook that required employee to submit disputes to arbitration within one year and rejecting plaintiff's argument that this provision was invalid because section 16.070 of the Texas Civil Practices and Remedies Code prohibits contractual limitations periods less than two years; in rejecting the statute's application, the court noted the claims were employment discrimination claims, not claims based on a contract).

Further, Vincent's reading of the statute—that it prohibits contractual limitations periods of less than two years—makes no sense when applied to defamation claims.  The statutory limitations period for defamation claims is *one* year from accrual of the claim.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (Vernon 2002).  The Court therefore holds that section 16.070(a) of the Texas Civil Practices and Remedies Code does not invalidate the Limitations Provision.

Vincent also contends, without citing any legal authority, that the Limitations Provision is unenforceable for lack of consideration.  The Court disagrees.  In Texas, unless otherwise agreed, employment is at-will.  *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 439 (5th Cir. 2001).  The Fifth Circuit has explicitly held that an offer of at-will employment serves as consideration under Texas contract law.  *See Hadnot v. Bay, Ltd.*, 344 F.3d 474, 477–78 (5th Cir. 2003) (citing *In re Halliburton*, 80 S.W.3d 566, 569 (Tex. 2002)).[10]  In *Hadnot*, an employment application specified that the employer Bay's acceptance of "Hadnot's job application and any offer of employment is 'in exchange for' the willingness

---

[10]    Courts in other jurisdictions also routinely hold that the creation of an employment relationship, which is achieved when the employer agrees to consider and/or agrees to hire the applicant for employment, is sufficient consideration to uphold an arbitration agreement contained in an employment application.  *See, e.g., Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 368 (7th Cir. 1999) (promise of employment was adequate consideration for employee's agreement to arbitrate); *Rogers v. Brown*, 986 F. Supp. 354, 359 (M.D. La. 1997) (upholding arbitration provision in application for employment; employee's consideration for contract was employment and compensation from employer); *Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 154 (N.D. Ill. 1997) (defendant's promise to consider the plaintiff for employment provides the necessary consideration to support an arbitration agreement contained in an employment application); *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 879 (N.J. 2002) (the creation of the employment relationship—which begins when the employer agrees to consider an applicant for employment—is sufficient consideration to uphold an arbitration agreement).

11

of the prospective employee to arbitrate all employment decisions." *Id.* at 476.  Like Vincent, Hadnot asserted that the agreement was not supported by consideration and was therefore invalid.  *See id.* at 476.  The Fifth Circuit found that the agreement was formed when Hadnot signed the application and began working.  *Id.* at 477.  The court explained: "Even though Bay could terminate Hadnot at any time thereafter, the fact remains that Bay had already performed, viz, accepted Hadnot's job application, in exchange for Hadnot's agreement to arbitrate any claims arising out of the period of employment—even one day." *Id.*  The Fifth Circuit therefore compelled arbitration, holding that the offer of at-will employment was adequate consideration to support Hadnot's agreement to arbitrate.  *See id.* at 477–78.

Furthermore, courts in other jurisdictions have enforced abbreviated limitations periods contractually agreed to by the parties in employment applications.  *See Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357–58 (6th Cir. 2004) (job application's six-month limit for bringing employment-related claims against company upheld as valid and enforceable under Michigan law); *Thomas v. Guardmark*, 381 F.3d 701, 706 (6th Cir. 2004) (enforcing six-month limitations period in employment agreement employee signed as condition of employment under Tennessee law); *Badgett v. Fed. Express Corp.*, 378 F. Supp. 2d 613, 616, 625–26 (M.D.N.C. 2005) (predicting North Carolina would enforce six-month limitations clause contained in employment agreement plaintiff signed in conjunction with her application).

The Court initially notes that the Limitations Provision specifically states that Vincent's concession to shorten limitations was "in partial consideration for [her] employment."[11]  The consideration found sufficient to enforce the arbitration clause in *Hadnot* is identical to the consideration Vincent received in exchange for her agreement to shorten limitations—an offer of at-will employment.  *See Hadnot*, 344 F.3d at 477–78. Vincent is bound to her written agreement signed at the time of her application of employment with Comerica.  *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("[A] party is bound by the terms of the contract he signed.").   The Limitations Provision is supported by adequate consideration.

As discussed above, the Limitations Provision is valid and applies to Vincent's defamation claims in this lawsuit.  Vincent's claims are untimely because she did not file suit until May 31, 2005—more than six months from Comerica's alleged defamatory conduct of October 27, 2004.  Comerica is therefore entitled to summary judgment based on the Limitations Provision.

**B.      Qualified Privilege**

Comerica alternatively moves for summary judgment on the ground that its statement to Comerica was protected by a common law qualified privilege.  A summary of the applicable law, and then a discussion of the parties' arguments and analysis follow.

**1.      Texas Defamation Law**

---

[11]      *See* Limitations Provision.

**Defamation Generally.**— Under Texas law, "[d]efamation is a false statement about a plaintiff published to a third person without legal excuse which damages the plaintiff's reputation.  Libel is defamation in written or other graphic form.  Slander is orally communicated defamation." *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.) (internal citations omitted).[12]  Regardless of its form, a statement is only defamatory "if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury."  *Henriquez v. Cemex Mgmt., Inc.*, 177 S.W.3d 241, 252 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see Cram Roofing Co., Inc. v. Parker*, 131 S.W.3d 84, 90 (Tex. App.—San Antonio 2003, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 73.001).  To recover on a defamation claim as a private individual under Texas law, one must prove: (1) the defendant published a false statement; (2) the statement was defamatory to plaintiff; and (3) the defendant made the statement negligently as to its truth.  *Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir. 2002) (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).[13]

The threshold issue of whether the words used are capable of a defamatory meaning is a question of law for the court.  *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114

---

[12]     Vincent pleads both libel and slander theories.  However, the distinction between libel and slander is not pertinent to the analysis in this case.

[13]     With respect to the third defamation element, a public figure must prove the defendant acted with malice regarding the truth of the statement.  *McLemore*, 978 S.W.2d at 571 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).

(Tex. 2000); (citing *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)).  The Texas Supreme Court has long held that the court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement.  *Turner*, 38 S.W.3d at 114; *Musser*, 723 S.W.2d at 655.  Only when the court determines the language is ambiguous should the jury then determine the statement's meaning and its effect on the ordinary person.  *Musser*, 723 S.W.2d at 655.  "The statements alleged to be defamatory must be viewed in their context; they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances."  *MKC Energy Invs., Inc. v. Sheldon*, 182 S.W.3d 372, 377 (Tex. App.—Beaumont 2005, no pet.) (citing *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 248 (Tex. App.—San Antonio 1996, no writ)).

Truth, even substantial truth, is a complete defense to defamation.  *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990); *see also David L. Aldridge Co. v. Microsoft Corp.*, 995 F. Supp. 728, 741 (S.D. Tex. 1998) (Lake, J.) ("The Fifth Circuit has interpreted Texas law as requiring the plaintiff to prove falsity as an element of a cause of action for defamation." (citing *Brown v. Petrolite Corp.*, 965 F.2d 38, 43 (5th Cir. 1992))).  The test used in deciding whether a statement is substantially true involves considering whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in the mind of the average listener, than a truthful statement would have been.  *McIlvain*, 794 S.W.2d at 16.

**Qualified Privilege.**— Texas recognizes a qualified privilege for "statements that occur under circumstances wherein any one of several persons having a common interest in a particular subject matter may reasonably believe that facts exist that another, sharing that common interest, is entitled to know." *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999) (citing *Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 92 (Tex. App.—Dallas 1996, writ denied)); *see also ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 442 (5th Cir. 1995). Courts applying Texas law teach that the qualified privilege applies to statements about an employee made by the employee's former employer to a prospective employer. *Wheeler*, 168 F.3d at 253 (citing *Free v. Am. Home Assurance Co.*, 902 S.W.2d 51, 55–56 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Pioneer Concrete of Tex., Inc. v. Allen*, 858 S.W.2d 47, 49 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *Smith v. Holley*, 827 S.W.2d 433, 436 (Tex. App.—San Antonio 1992, writ denied)); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 324 (5th Cir. 1997).

A showing of actual malice, however, will defeat the qualified privilege. *Wheeler*, 168 F.3d at 253; *Burch*, 119 F.3d 323. In connection with defamation claims, actual malice refers not to ill will, but rather to the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true. *Wheeler*, 168 F.3d at 253; *Duffy*, 44 F.3d at 313 (citing *Carr*, 776 S.W.2d at 571). Clear and convincing evidence of such malice is required in order to defeat a qualified privilege. *Duffy*, 44 F.3d at 313 (citing *Howell v. Hecht*, 821 S.W.2d 627, 630 (Tex. App.—Dallas 1991, writ denied)). "Reckless disregard is defined as a high degree of awareness of probable falsity, for proof of which the plaintiff

must present sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.  An error in judgment is not enough." *Duffy*, 44 F.3d at 313 (quoting *Carr*, 776 S.W.2d at 571 (internal quotation marks omitted)).

Furthermore, in federal court, it is the plaintiff who, under the applicable summary judgment standard, must adduce proof of malice in order to avoid entry of summary judgment against him, since state law requires the plaintiff to demonstrate such malice at trial. *Duffy*, 44 F.3d at 313–14 (citing *Celotex* to conclude that the burden of showing malice rests upon the plaintiff); *see also ContiCommodity Servs.*, 63 F.3d at 443.[14]

###    2.    Discussion

Because Comerica's statement to Edward Jones was made to persons who had an interest in the matter to which the communications related, it was protected by a qualified privilege, unless Vincent establishes a fact issue that the statement was made with actual malice.  *See Wheeler*, 168 F.3d at 253 (holding qualified privilege applies to statements about employee made by employee's former employer to prospective employer); *Burch*, 119 F.3d at 324 (same).

Vincent concedes that the qualified privilege applies to Comerica's statement to Edward Jones regarding her termination.  Vincent argues that the privilege is defeated because Comerica acted with actual malice in that it had actual knowledge the statement was

---

[14]    Texas state courts, in contrast, ordinarily place the burden on the defendant to prove lack of malice on summary judgment.  *See Randall's Food Mkts.*, 891 S.W.2d at 646 (holding that an employer must conclusively establish absence of malice on summary judgment).

false.  Vincent correctly acknowledges that malice in this context requires a dual showing: the statement must be false and the speaker must have actual knowledge of the falsity.  *See Wheeler*, 168 F.3d at 253; *Duffy*, 44 F.3d at 313 (holding that a showing of actual malice, which in the context of defamation refers to making a statement with knowledge that it is false, or with reckless disregard of whether it is true, defeats the qualified privilege).  At the summary judgment stage in this federal forum, Vincent bears the burden of establishing malice.  *See Duffy*, 44 F.3d at 313–14.  Vincent does not meet her burden in this regard.

To establish falsity of the statement by Comerica employee Ruiz to Douglas of Edward Jones, and thus to meet one of the elements of actual malice, Vincent argues that she was not terminated for "differences" or "balancing problems" as Ruiz stated when Douglas called for the reference.  Rather, Vincent argues, she was terminated for "failing to place a hold on deposits."   This argument is unpersuasive.   A fair reading of the "differences/balancing problems" language demonstrates, at most, that Comerica may have used somewhat imprecise or general language.   However, Vincent has not shown the statement to be false or inaccurate.  It is undisputed that because Vincent failed to place a hold on a customer's deposits, Comerica suffered a loss of almost $3,500 in that customer's account when the deposited checks "bounced."  This loss caused a negative balance to Comerica, and was a "balancing problem" from Comerica's perspective.  Classifying the incident as a "difference" or "balancing problem" was not false and Vincent has not shown Comerica acted with actual malice in so labeling the incident in her personnel file.  *See*

*Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 174–75 (Tex. 2003) (holding that imprecise language by itself does not establish malice).

Further, even if the statement could be deemed false, actual malice cannot be inferred from the falsity of the statement alone. *See Duffy*, 44 F.3d at 314; *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 497 (Tex. App.—Austin 2003, no pet.). Under the actual malice standard, Vincent must show that Comerica at least "entertained serious doubts as to the truth of the communication." *See Duffy*; 44 F.3d at 314. "Negligence, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice." *Id.* at 313 (internal citation omitted). Moreover, "the issue at to actual malice is the speakers' subjective state of mind." *Austin*, 118 S.W.3d at 497.

Nothing in the record supports a finding that De La Vega, who selected the termination code on Vincent's separation form, or Ruiz, who relayed the termination code language to Edward Jones, entertained serious doubts that Vincent was actually discharged for "differences" or "balancing problems." There is nothing in the record regarding De La Vega's subjective state of mind, but there is evidence that the termination code used for Vincent was the standard code used for terminations based on similar incidents. There is no evidence whatsoever that Ruiz acted with actual malice. The record in fact reflects otherwise: Ruiz was not aware of the underlying facts of Vincent's termination and merely relayed to Edward Jones the language of the termination code on the separation form De La Vega submitted. Vincent has not met her summary judgment burden to show actual malice.

In summary, Vincent's argument that the qualified privilege is inapplicable because

Comerica acted with actual malice fails.  There is no evidence that Comerica's statement to Edward Jones was objectively untrue.  Even if the statement could be deemed false, Vincent has not met her burden to produce some evidence to support her position on the other required element of actual malice, namely, that Comerica made the statement with knowledge of its falsity or with reckless disregard of the truth.  Vincent thus has failed to create a genuine fact issue that Comerica acted with actual malice in making the alleged defamatory statement.  The Court therefore concludes that Comerica's statement to Edward Jones is protected by the qualified privilege.  Accordingly, Comerica is entitled to summary judgment on Vincent's defamation claims.[15]

### C.    Vincent's Motion

Vincent moves for summary judgment for Comerica's liability on her defamation claims.  For the same reasons discussed above, summary judgment in Vincent's favor is not warranted.

## IV.    CONCLUSION

Comerica has demonstrated in the summary judgment record that Vincent's defamation claims are untimely pursuant to the Limitations Provision in her Comerica

---

[15]    In its Motion, Comerica also contends summary judgment is warranted on the following alternative grounds: (1) Vincent has not shown the alleged defamatory statement to be false; (2) Comerica has satisfied the affirmative defense that the alleged defamatory statement is true; (3) Vincent consented to defamation by authorizing Edward Jones to contact Comerica; and (4) Comerica is protected by the statutory qualified privilege in Chapter 103 of the Texas Labor Code.  Because the Court grants summary judgment in favor of Comerica based on the Limitations Provision and, alternatively, the common law qualified privilege, the Court does not address Comerica's alternative arguments.

employment application.  Alternatively, Comerica has met its summary judgment burden to establish it's alleged defamatory statement is protected by the qualified privilege.  Vincent has failed to meet her burden to establish a genuine fact issue to defeat the qualified privilege by showing that Comerica acted with actual malice.

Vincent  has expressly abandoned her claims against Comerica for negligence and gross negligence.  Comerica is therefore entitled to summary judgment dismissing each claim in Vincent's Amended Complaint.  Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment [Doc. # 21] filed by Defendant Comerica Bank is **GRANTED**.  It is further

**ORDERED** that the Motion for Summary Judgment [Doc. # 23] filed by Plaintiff Stephanie Vincent is **DENIED**.

A final judgment will be entered separately.

**SIGNED** at Houston, Texas, this **9th** day of **May, 2006**.

Nancy F. Atlas
United States District Judge